## WOODMAN *vs.* EASTMAN.

10   359
67   588

Parties may agree upon the facts, and submit the case to the decision of the court; but the court cannot be required to take the evidence in a case, determine what is admissible, and ascertain the facts from the testimony which is thus submitted.

If the indorsee of a note, after a demand upon the maker, and notice to the indorser, for a good consideration agree with the maker not to sue the note or attempt to collect it for a certain period, that will discharge the indorser.

The maker of a note is not liable for the costs of an action in favor of the indorsee against the indorser, and is a competent witness in such action, his interest being balanced. It is otherwise if the note is an accommodation note.

In a suit between a party to a written agreement and a third person, the latter may show that the actual agreement was different from that reduced to writing, or that it contained other stipulations. The rule, that oral evidence cannot be received to add to or contradict written instruments, does not apply to persons who are not parties to them, where they come in evidence incidentally.

If an indorser of a promissory note, having full knowledge that he is discharged by an agreement between the indorsee and the maker for a delay of payment, makes an express promise to pay the note, that will operate as a waiver of his right to set up the agreement in his discharge, and bind him as if it had not existed.

If the court, in their discretion, consider evidence furnished, as a case stated, they will regard only the facts directly proved; and not find further facts by way of inference, where the matter is uncertain, as a jury may do.

An indorser of a note, who received a mortgage of the maker for its security, is, notwithstanding, entitled to require proof of demand and notice.

ASSUMPSIT, by the indorsee, against the indorser of a promissory note, signed by John Averill, dated at Bangor, July 25, 1835, for the sum of $675, payable to the defendant, or order, at the Mercantile Bank, in Bangor, in one year from date, with interest annually.

The parties submitted the case to the court upon the evidence contained in certain depositions, which was to be admitted so far as it was competent, and upon certain facts which were agreed: the matter to be considered as if the action had been tried by the jury, and a case saved. Judgment to be rendered according to the opinion of the court.

The writ was dated November 16, 1836.

The signature and indorsement of the note were admitted.

To prove a demand upon the maker, and notice to the defendant, the plaintiff introduced in evidence the deposition of a witness, who stated that he was a notary public ; that on the 28th of July, 1836, he went with the note to the Mercantile Bank, in Bangor, and demanded payment of the cashier, who refused because there were no funds there ; and that on the same day he made a formal protest, as appeared by his notarial book of records, and put into the post-office a letter addressed to the defendant, at his residence in Gilmanton, notifying him of the fact that the note was protested, and that the holder looked to him for payment.

From other depositions, it appeared that the defendant had taken a mortgage from Averill, to secure this note and another note from Averill to himself, and that he had transferred and delivered the mortgage to the plaintiff. In January, 1837, after this suit was commenced, the defendant applied to the brother of the plaintiff, with whom the mortgage was deposited, and obtained possession of it, saying that he had been sued upon the note, and his property attached, and he thought the plaintiff ought not to hold the mortgage and attachment both—that he should settle the suit, and wanted the mortgage to raise some money upon to pay his debts— that he held the other note, and if he could have the mortgage he could raise the money from it in Boston. It appeared, also, that the defendant, at the same time, after receiving possession of the mortgage, said that the plaintiff had received his pay of Averill, and that he had a copy of a receipt which would cut off the note in suit against him.

It was agreed that on the 25th of August, 1836, the plaintiff executed a written instrument, by which he acknowledged that he had received of Averill a certain note, signed by Averill, and one Fuller as surety, dated August 17, 1836, for $330, payable in four months, with interest, and also a draft, drawn by Averill on one Wadleigh, and in-

Woodman *v.* Eastman.

dorsed by the plaintiff, for $415·50, payable in ninety days and interest ; and the plaintiff stipulated, in the writing, that if the draft and note were paid at maturity, he would deliver up the note upon which this action is founded, to Averill, free from cost and charges, "otherwise the said note to remain in full force."

The defendant introduced the deposition of Averill, to make part of the case, to the admission of which the plaintiff objected.    He stated, that after the note in question fell due, he had a conversation with the plaintiff about exchanging paper payable in three or four months, for the note—that on the 25th of August, the plaintiff agreed to make an exchange, and he then turned out to the plaintiff the note and draft mentioned in the receipt—that after the paper was turned out, the plaintiff said he might have to indorse the draft, and he would keep the note in question for security, but agreed not to sue it, or attempt to collect it, until after the draft fell due—that the paper which the witness turned out to him was in payment of the note, and the note was only retained as collateral for the draft—that the note and draft amounted to about thirty dollars more than the note indorsed by the defendant to the plaintiff, which sum the witness agreed to give, and the plaintiff agreed to take, in consideration of the exchange for paper payable at a future day—and that this arrangement was made without the knowledge of the defendant.

It further appeared that the plaintiff, about the first of September, 1836, sold the note and draft thus received of Averill, and received the money for them ; and that the note against Averill and Fuller had been paid.

*I. A. Eastman,* for the defendant.  The protest, and proof of protest, are insufficient.    The indorsee residing in one state, and the maker and holder in another, the note is in the nature of a foreign bill, (*Buckner* vs. *Finley,* 2 *Peters* 586,) and the protest should be made and proved accordingly.    The

protest is not made according to law, nor is the proof sufficient, the original protest under the seal of the notary being required. At all events the evidence of protest is incomplete. Atwood's oath of his being a notary is secondary. Record proof is necessary.

The deposition of Averill shows that the note in suit was cancelled, or at least a day of payment given for a consideration paid ; and this deposition is confirmed, rather than invalidated, by the receipt. This action being between third persons, the receipt may be explained and contradicted.

It appears that the plaintiff has had his money, and consequently has no equitable or legal claim upon the defendant.

Should a question arise as to the admissibility of Averill's deposition, he being the maker of the note, it is distinctly settled in New York that the maker is admissible. 16 *Johns. R.* 70, *Hubbly* vs. *Brown ;* 3 *Wend. R.* 415, *Williams* vs. *Walbridge ;* 10 *Wend. R.* 93, *Boyd* vs. *Brotherson.* In Massachusetts, the decisions have been, that the maker cannot be admitted to prove fraud, or want of validity in the making of the note ; but whether to prove after transactions has not been distinctly settled. *Spring* vs. *Leavitt,* 11 *Pick. R.* 417, goes far for the admissibility.

This action was commenced before either the note or draft fell due. This appears from the receipt, and we suppose is of itself sufficient to defeat the action. The case finds nothing like a new promise. Besides, we suppose that the indorser being once discharged in law, nothing short of a written promise could avail any thing.

But, further, this evidence relates to conversations after the commencement of the suit ; and if there was evidence of an express promise to pay, in writing even, it could avail nothing in this suit.

*Lyford & Clark,* for the plaintiff, contended, 1. That the act of the plaintiff, in taking collateral security from Averill, in the manner shown by the receipt, was beneficial to the

Woodman *v.* Eastman.

defendant, and could not impair the rights of the plaintiff. 16 *Johns. R.* 41, *Lynch* vs. *Reynolds ;* 1 *Barn. &c Cres.* 14, *Pring* vs. *Clarkson ;* 3 *Price's R.* 521, *Badenel* vs. *Samuel ;* 7 *Wend.* 117, *Mohawk Bank* vs. *Van Horne ;* 18 *Johns.* 28, *Hallett* vs. *Holmes ;* 5 *N. H. Rep.* 99, *Bank* vs. *Woodward ;* 5 *Pick.* 15, *Loring* vs. *Gurney.* 2. That the defendant, after all the transactions between the plaintiff and Averill, made a new promise, when he must have had full knowledge of the facts, and that this was binding. 1 *Johns. Cas.* 99, *Leffingwell* vs. *White ;* 10 *Wend. R.* 504, *Leonard* vs. *Gary ;* 12 *Wend. R.* 110, *Keeler* vs. *Bartine ;* 2 *N. H. Rep.* 340, *Ladd* vs. *Kenney ;* 12 *Mass. R.* 53, *Hopkins* vs. *Liswell.* 3. That the defendant, having taken a mortgage to secure the debt, was liable without notice—2 *Greenl. R.* 207, *Mead* vs. *Small ;* 5 *Mass. R.* 170, *Bond* vs. *Farnham ; Chitty on Bills* 378, (*Phil. ed.* 1821.) 4. That Averill was not a competent witness—14 *Mass. R.* 312, *Pierce* vs. *Butler.*

PARKER, C. J. This case comes before us somewhat irregularly, as the counsel are aware. It is competent for the parties in any case, if they think proper, to agree upon the facts, and submit the case thereupon to the decision of the court. But the court cannot be required to take the evidence in a case, determine what is admissible, and to what part objections may exist on account of the interest of the witnesses, and then ascertain the facts of the case, from the testimony which has been submitted.

But the case having come up in this shape, we have not thought it expedient to delay the parties by sending it back without examination, and have considered the matters involved in it, so far as they appear to be necessary to a decision, on this evidence.

A protest, duly authenticated, is the regular evidence of the dishonor of a foreign bill. And a bill drawn in one of the United States, payable in another, has been held to

be a foreign bill. *See cases cited in Carter* vs. *Burley*, (9 *N. H. Rep.* 566.)

It has been said that every indorsement of a bill may be considered as a new bill drawn by the indorser on the acceptor. The indorsement of a promissory note has an operation somewhat similar; but the question whether the dishonor of a promissory note, executed in one state by a person residing there, made payable to an inhabitant of another state, and by him indorsed, is to be proved, or may be proved, in the same manner as the dishonor of a foreign bill, need not be settled here. This matter was partially considered in *Carter vs.* Burley, and several authorities examined.

Assuming that a protest is not essential to prove the dishonor of an indorsed promissory note, and that there was due evidence of a demand and notice in this case; it appears from the deposition of Averill, the maker, if that is admissible in evidence, that after the note became due the plaintiff received from him a note and a draft, the note being taken in part payment—that he agreed that the draft, when paid, should be in satisfaction of this note—that the draft had ninety days to run, and the plaintiff agreed not to sue this note, or attempt to collect it, until after the draft fell due. Such agreement would operate to discharge the defendent as indorser, even if there had been before that time a regular demand and notice. 16 *Johns. R.* 70, *Hubbly* vs. *Brown ;* 2 *Starkie's Ev.* 289, *and cases cited in note.*

It is objected that the testimony of Averill is inadmissible, because he has an interest, as maker of the note; and there is something in the opinion of Mr. Justice Jackson, in *Pierce* vs. *Butler*, 14 *Mass. R.* 312, cited for the defendant, which seems to sustain this objection. But we do not perceive the grounds upon which it is to be maintained. The maker is not liable for the costs of an action in favor of the indorsee against the indorser. 9 *Johns. R.* 131, *Simpson* vs. *Griffin ;* 3 *Wend. R.* 416, *Williams* vs. *Walbridge ;* 10 *Wend. R.* 93, *Boyd* vs. *Brotherson.* It is otherwise in the case of an ac-

commodation note, which was the character of the paper in Pierce *vs.* Butler. 14 *Mass. R.* 312 ; 4 *Day's R.* 108, *Cowles* vs. *Wilcox;* 16 *Johns.* 70. If the plaintiff recovers in this case, the maker will be liable to the defendant for the amount of the note. The same result would be attained if the plaintiff should hand the note back to the defendant, without any recovery; if the plaintiff fails, or if he should dismiss his suit, the maker is equally liable to him. If, then, the maker is not liable for the costs, he can have no interest, being equally liable to either party. The authorities seem fully to show that the maker has no interest to exclude him from being a witness in a suit in favor of the indorsee against the indorser. 2 *Stark. Ev.* 299 ; *Roscoe's Ev.* 177 ; *Bayley on Bills* 373 ; *and cases cited.*

Nor is the evidence of Averill exceptionable because it goes to prove an agreement which is not contained in the written receipt, or agreement, signed by the plaintiff, when he received the note and draft, on the 25th of August. So far as it shows an agreement for delay, it does not contradict any thing in that instrument, but is entirely consistent with it. But if it had contradicted it, the defendant would not be precluded, by any writing between the plaintiff and Averill, from proving all the terms of the agreement. The rule that evidence cannot be admitted to contradict or add to the terms of a written instrument, has no application to third persons who are not parties to the written agreement. We are of opinion, therefore, that Averill's evidence is admissible, and that the agreement, which he states, operates to discharge the defendant from his liability as indorser.

But the plaintiff contends that if there was an agreement for delay, that might have such an operation ; the defendant is liable upon a new promise, made subsequently.

There is no doubt that the defendant might waive his right to avail himself of a discharge of that character. And a new consideration would not be necessary for that purpose. If, having full knowledge of the circumstances upon which he

might claim his discharge, he saw fit, notwithstanding, to make an express promise to pay the note, that promise would be a waiver of a right to set up the defence, and would bind him.

In order to sustain himself upon this ground, the plaintiff must show that the defendant has made a new promise, and that this was done with a full knowledge of the facts which show that he was discharged. 7 *N. H. Rep.* 271, *Farrington* vs. *Brown*, and auth. cited; *Carter* vs. *Burley*, 9 *N. H. Rep.* 572.

Upon the case made before us, the plaintiff fails in both these particulars. It does not appear that the defendant made a promise to pay. There is evidence of what was said by him, at the time when he procured the mortgage from the plaintiff's brother, from which a jury might perhaps infer a promise to pay. But the court cannot draw that inference; and the fact that it was subsequent to the commencement of this suit need not, therefore, be considered. If the promise had been established, the fact that the defendant had knowledge of the agreement, stated by Averill, no where appears. He knew that the plaintiff had received the note, and draft, and had given the receipt; and he knew the terms of the receipt, and the stipulation contained in it; but the agreement to delay the collection is not there. That was a verbal agreement. The defendant spoke of the receipt as something which would discharge the note, but not of the agreement for delay. On the supposition, however, that there is, in the testimony, sufficient matter to be submitted to a jury, and on which they might find that he had knowledge of the agreement, as well as of the receipt; the court cannot find that fact, or draw such an inference from what appears in the case. If that was relied on, and there is evidence which might be submitted to a jury, for that purpose, the case should have been put to the jury. It might admit of some doubt whether the evidence of what the defendant said, in January, 1837, could have been submitted to a jury, as matter upon

which they were authorized to find that the defendant had knowledge of the agreement for delay at that time ; but connected with the facts, that he received his knowledge of the receipt from Averill, and that he has since taken Averill's deposition to prove the agreement upon which he now relies for a discharge, the evidence might perhaps have been submitted to them.

It is further contended, on the part of the plaintiff, that the defendant, having taken a mortgage from Averill to secure the note, is liable for that reason ; and is not entitled to require evidence of demand and notice. Whether the counsel would contend that this furnishes an answer to the agreement for delay, Averill's deposition being admitted as competent proof, has not been very distinctly stated. The abstract in *Mead* vs. *Small,* 3 *Greenl. R.* 207, cited for the defendant, is, " If the endorser of a note has protected himself from eventual loss, by taking collateral security of the maker, it is a waiver of his legal right to require proof of a demand upon the maker and a notice to himself." The opinion seems to sustain this ground ; but the fact that the indorser, if compelled to pay, will not suffer loss, can hardly modify or control the ordinary legal rights or liabilities of the parties, arising from the indorsement. Possibly the indorser might, in equity, be so far regarded as a surety, that the creditor would be entitled to the benefit of the security. 1 *Story's Eq.* 481 ; 11 *Ves. R.* 22.

An indorser of a note, who holds a mortgage for its security, unless there is at the time of the indorsement, or afterwards, some other evidence of waiver, seems to have the same right to be exonerated by the neglect of the holder, as any other indorser. In such case, if there was but one note secured by the mortgage, the indorsee would either be entitled to the benefit of the mortgage, upon the ground that it passed as an incident ; or the mortgage would be destroyed by the transfer of the note, and the holder would have a right to attach the land. If there were other demands secured by

the mortgage, and retained by the mortgagee, it might be different, but that could not change the nature of the case. If, by the indorsement, the note was so separated from the mortgage that the latter was no longer a security, the indorsee might attach the equity of redemption. In either case, there would be nothing to show that it was within the contemplation of the parties that the right to require demand and notice should be waived, and of course nothing to show even an implied agreement to that effect.

Upon examining the statement of the case in Mead *vs.* Small, some facts appear which might have influenced the decision. At the time of the indorsement, it was agreed between the indorser and indorsee, the note being not then payable, that the indorsee should hold the note, and receive payment in labor ; that the maker should not be sued, he having no personal property liable to attachment ; but if he could not pay the note, it should be returned to the indorser, who held the mortgage of the maker's real estate, as collater ', and sufficient security for the amount.

The case, *Bond* vs. *Farnham, 5 Mass. R.* 170, was different. There, it would seem, after the indorsement, the indorser took an assignment of all the property of the maker, to secure himself against his indorsements. The court held, although he had not received sufficient to indemnify him against other indorsements, that it was a waiver of a right to require a demand and notice, because he knew such a demand must be fruitless. He should not, it was said, " insist on a fruitless demand upon the maker, or on a useless notice to himself, to avoid payment of demands, which on receiving security he had undertaken to pay." If this doctrine may be considered sound, it is evident that it has no application to this case.

But, further, there is evidence tending to show that the mortgage was transferred to the plaintiff, and that the defendant afterwards got possession of it improperly. If the security that the defendant had taken was transferred to the

plaintiff, the exception, if it might otherwise avail, would fail for that reason. If the defendant has since obtained it improperly, the plaintiff has his remedy.

We have taken no notice of the fact, that the plaintiff sold the note and draft received of Averill, and obtained the money for them. It does not appear that he has since been held liable on his indorsement of the draft, which fell due since this action was commenced. If he has not, the note would seem to be fully paid, and a defence might be sustained on that ground.

*Judgment for the defendant.*